Bill **ZOGRAFOS** and **Sharon Zografos, Swan Ranch LLC, Lesco Enterprises, Inc., Gross–Wilkinson Ranch Co., Rex Dolan, and Everett and Joanne Chambers, Plaintiffs,**

v.

**QWEST COMMUNICATIONS CORP., Sprint Communications Company, L.P., MCI WORLDCOM Network Services, Inc., Williams Communications, LLC, and Level 3 Communications, LLC, Defendants.**

No. CIV.00–6201–AA.

United States District Court,
D. Oregon.

July 12, 2002.

Dan W. Clark, Dole, Coalwell, Clark, et al., Roseburg, OR, Samuel D. Heins, Stacey L. Mills, Renae D. Steiner, Kent M. Williams, Heins, Mills & Olson, Minneapolis, MN, Irwin B. Levin, Cohen & Malad, LLP, Indianapolis, IN, Kenneth Wittenberg, Wittenberg & Pitzer, Portland, OR, for Plaintiffs.

Michael G. Andrea, Eric R. Todderud, Heller, Ehrman, White & McAuliffe, LLP, Portland, OR, Emily Brubaker, John F. Daum, Paul G. McNamara, O'Melveny & Myers, LLP, Los Angeles, CA, Kyle D. Freeman, J. Kevin Hayes, T. Lane Wilson, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, David A. Handzo, J. Alex Ward, Jenner & Block, Washington,

*Kawamoto v. CB Richard Ellis, Inc.,* Civ. No. 02–00283 SOM/KSC; Order Granting Defendants' Motion to Transfer.

DC, Natalie L. Hocken, Pacificorp, Portland, OR, Joseph Edward Jones, Fraser, Stryker, Meusey, Olson, Boyer & Bloch, Omaha, NE, Stuart Duncan Jones, Bullivant, Houser, Bailey, PC, Portland, OR, Robert A. Kerr, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, J. Emmett Logan, Morrison & Hecker, LLP, John P. Nusbaum, Lawrence H. Reichman, Michael H. Simon, Perkins Coie, LLP, Portland, OR, Scott A. Powell, Hare, Wynn, Newell & Newton, Birmingham, AL, Henry J. Price, Price, Potter, Jackson, et al., Indianapolis, IN, Thomas C. Sand, Miller, Nash, Wiener, Hager & Carlsen, LLP, Portland, OR, M. Max Williams, II, Miller Nash, LLP, Portland, OR, for Defendants.

Nels J. Ackerson, Kathleen C. Kauffman, The Ackerson Group, Washington, DC, Douglas C. Adair, Trippe, Brown & Adair, LLP, Birmingham, AL, John B. Baldwin, Baldwin & Baldwin, LLP, Marshall, TX, Hayes D. Brown, Monroe, Trippe, Brown & Adair, LLP, Birmingham, AL, Donald J. Churnside, Gaydos, Churnside & Balthrop, PC, Eugene, OR, Andrew W. Cohen, Roger C. Johnson, Koontz, McKenney, Johnson, et al., Washington, DC, Catherine M. Colinvaux, Zelle, Hofmann, Voelbel, Mason & Gette, Waltham, MA, William A. Davis, Abbott, Davis, Rothwell, Mullin & Earle, PC, Portland, OR, Joel DeVore, Robert H. Fraser, David A. Jacobs, Luvaas, Cobb, Richards & Fraser, PC, Eugene, OR, Richard L. Duncan, Gilreath & Associates, Knoxville, TN, William T. Gotfryd, Arthur T. Susman, Susman & Watkins, Chicago, IL, George Valton Jones, George Valton Jones Attorney at Law, Marshall, TX, John F. Kilcullen, Brown, Roseta, Long, et al., Eugene, OR, Jordan M. Lewis, Stegel, Brill, Greupner, Duffy & Foster, Milwaukee, WI, John B. Massopust, Daniel J. Millea, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Minneapolis, MN, Mike Miller, Solberg, Stewart, Miller & Johnson, Fargo, ND, Donald K. Vowell, Vowell & Associates, Knoxville, TN, Ronald J. Waicukauski, Price, Potter, Jackson, et al., Indianapolis, IN, for Intervenors.

Ron Bodinson, Shook, Hardy & Bacon, LLP, Overland Park, KS, Christopher T. Carson, Kilmer, Voorhees & Laurick, PC, Portland, OR, Joe Rebein, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Union Pacific Railroad Co.

## OPINION AND ORDER

AIKEN, District Judge.

### FACTUAL BACKGROUND

This action arises out of the construction of fiber optic cable networks along railroad Rights of Way. *See* Amended Complaint, ¶ 2. Defendants Qwest Communications, Sprint Communication, MCI WORLDCOM Network Services, Williams Communications and Level 3 Communications (defendants) obtained the railroads' permission to install telecommunications facilities in the Rights of Way. *Id.* Plaintiffs alleged that the railroads' interest in a right of way is often easement or other limited property interest. *Id.* at 3. Plaintiffs further alleged that, because laying fiber optic cable and maintaining a telecommunications line is not a railroad purpose, the telecommunications companies have trespassed and continue to trespass, when they install and use fiber optic cable along the Rights of Way without the landowners' permission. *Id.* at 4.

The defendants asserts that the railroads own fee simple title to most of the railroads' Rights of Way and that, while their property interest is limited, it is still sufficient to authorize a telecommunications use. Defendants also assert that the installation of fiber optic networks began as early as 1984 and allege that plaintiffs' claims are barred by the statute of limitations, along with other affirmative defenses. The railroads also deny any

wrongdoing, and raise additional affirmative defenses.

## PROCEDURAL BACKGROUND

In June 2001, in the Northern District of Illinois (Chicago), a similar case was ongoing. Judge Anderson, the presiding judge, was informed that settlement negotiations were underway and therefore granted extensions of time for the briefing and discovery schedules. In September 2001, intervening parties filed motions to intervene in the Chicago lawsuit when they learned that a possible settlement proposal might be presented to Judge Anderson. On October 9, 2001, Judge Anderson held a status conference during which the parties announced a settlement agreement. On October 29, 2001, Judge Anderson again convened all of the parties (both the settling parties and the intervenors) and held another status conference. Parties to the proposed settlement agreement requested preliminary approval scheduling, however, Judge Anderson requested that intervenors' initiate settlement negotiations with the telecommunications defendants.

On November 8, 2002, Judge Anderson again convened a status hearing where the case was referred to Magistrate Judge Brown for settlement purposes. On November 19, 2001, Judge Brown issued an order setting a scheduling hearing for November 29, 2001, for the purpose of setting a settlement conference date. On December 18, 2001, Judge Brown held a full-day settlement meeting.

On December 19, 2001, Judge Anderson held another status hearing and stated, with regard to the status of the settlement proceeding before him, "I think the only honest thing that anybody ... can do in reporting on the proceedings in this court to another court is to truthfully report that there has been a proposal and there has been a process set in motion to see whether or not there could be a consensus behind that proposal—but the Court has not ruled on anything." On January 15, 2002, during another hearing held by Judge Anderson, he stated, "I am willing to go forward." Judge Anderson then formally appointed James Wilson, an attorney at the law firm Shefsky & Froelich in Chicago, as a Special Master to handle the settlement approval process. Judge Anderson ordered all parties to submit settlement papers to be docketed on the record and to file an amended complaint that included all the "consensus" telecommunication companies as defendants by February 26, 2002. He scheduled a hearing on March 4, 2002.

On January 25, 2002, the intervenor plaintiffs filed a Joint Motion for Transfer for Coordination or Consolidation pursuant to 28 U.S.C. § 1407 with the Judicial Panel on Multidistrict Litigation (MDL Panel), which was ultimately denied. That motion expressed concern that the telecommunications companies might engage in judge shopping.

On January 29, 2002, this court held a telephone status conference at the request of the parties in CV 00-6201-AA, and discussed a briefing schedule for the preliminary approval of settlement. On January 31, 2002, the settling parties (plaintiffs and five defendant telecommunications companies) filed with this court, a Joint Motion for Order for preliminary approval of settlement, certification of a settlement class, approval of notice and entry of an injunction against prosecution of settled claims, and a stipulation to amend the complaint—and moved for expedited approval. Within days, a vast array of intervening parties filed motions to intervene in this action. Also on January 31, 2002, plaintiffs' counsel mailed Judge Anderson a letter informing him that the settling parties would no longer seek approval of the Settlement

Agreement in the Northern District of Illinois.

At issue before this court is the intervenors' Motion to Dismiss the Amended Complaint or Stay this Action. The settling parties oppose the motion and urge the court to proceed to consideration of their motion for preliminary approval of the proposed settlement. The intervenors' motion to dismiss the amended complaint is granted, and the alternative motion to stay is denied as moot.

## DISCUSSION

 The Ninth Circuit has set forth five factors for a district court's consideration before resorting to the penalty of dismissal for judge shopping: (1) the public's interest in expeditious resolution of ligation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Hernandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir.1998). *Hernandez* noted that the trial judge had failed to explicitly consider the five factors noted above, therefore, the appellate court reviewed the record independently to determine whether the district court had abused its discretion. *Hernandez* held it will "affirm a dismissal where at least four factors support dismissal, or where at least three factors 'strongly' support dismissal." *Id.*

## APPLICATION OF THE HERNANDEZ FACTORS

1. *The public's interest in expeditious resolution of litigation.*

The settling parties argue that this factor weighs in favor of this court proceeding with consideration of the proposed settlement because dismissal would "delay or prevent" judicial consideration of the proposed settlement because several parties to the proposed settlement would no longer be parties to the case.

The Intervenors' respond that there is no reason to conclude that there will be any additional delay by resuming the process in Chicago, as opposed to starting anew here in Portland. The Intervenors' argue that the settling parties have already caused substantial delay by coming to this court after spending five months before Judge Anderson in Chicago.

The Ninth Circuit has provided district judges with great latitude to evaluate the impact of this factor. "District judges are best situated to decide when delay in a particular case interferes with docket management [factor 2] and the public interest [factor 1]." *Yourish v. California Amplifier,* 191 F.3d 983, 989 (9th Cir.1999). The court continues, "[g]iven the district court's superior position in evaluating the public interest in expeditious resolution of a particular case, we agree with [the district court's finding]." *Id.* (internal citations omitted).

I find that this factor weighs heavily in favor of dismissal. The *Hernandez* court also found this factor favored dismissal stating, "assuming that the plaintiffs were judge-shopping when they re-filed *Hernandez* in state court as *Garza,* we must conclude that the subsequent delays for re-filing and then removal to federal court run counter to the public's interest in expeditious litigation." *Id.* at 399. The same analysis applies here. The parties were five months into the settlement approval process with Judge Anderson when they decided to terminate the process with him and start over in Portland. The public's interest in a fair, efficient and expeditious resolution of this matter supports dismissing the amended complaint considering the investment of time and expertise demonstrated by the Chicago court. The Northern District of Illinois had a district

court judge, a magistrate judge and a Special Master all committed and actively working to resolve this litigation. Any delay the settling parties now face for approval of their proposed settlement is due to their choice to abandon the process they had begun in Chicago. This litigation involves significant and far-reaching issues that deserve serious consideration and the utmost scrutiny by the court. The fact that this process was well underway in Chicago and then abruptly aborted calls into question the role of the judiciary as unbiased fact-finders. The integrity of the approval process must be respected and upheld for it is only when that process is protected that we can be sure of a fair and impartial result.

### 2. Court's need to manage its docket.

The settling parties argue that this factor also weighs in favor of denying the motion to dismiss. They assert that dismissal of the amended complaint would not rid this court of either the original Zografos or Rebb cases assigned to this court. They contend that there would be numerous fiber optic cases remaining nationwide, and therefore, this court can best manage its own docket and help lighten the docket of numerous other courts around the nation, by denying the motion to dismiss and moving forward with consideration of the proposed settlement.

The Intervenors argue that better management of this court's docket would be to grant the motion to dismiss. The Intervenors cite the complexity of the proposed settlement and the enormous time investment it will require of any court, and then point out that Judge Anderson already has five months invested in this proposed settlement. While it is true that the two cases originally assigned to this court will remain here, it is likely they will once again be stayed as they were prior to the settlement approval proceedings moving to Portland. Regarding the settling parties'

argument that denial of the motion to dismiss will "help lighten the docket of numerous other courts around the nation," first—this factor is concerned with *this* court's need to manage its own docket; and second, that advantage can be claimed for whichever court eventually handles the proposed settlement.

The *Hernandez* court noted that the court's ability to manage its docket was "undoubtedly somewhat impaired" by the plaintiffs' filing of two identical complaints under different names. However, the court also noted that the plaintiffs' judge-shopping did not consume "large amounts of the court's valuable time," or cause "any serious disruptions" of the district court's schedule. Therefore, the court concluded that this factor weighs in favor of dismissal, "but not heavily." *Id.*

Our docket management was "somewhat impaired" by the settling parties having begun this process in the Chicago District court and then suddenly transferring here, however, this case has not yet caused any serious disruptions. It has, however, and will certainly continue to consume large amounts of the court's time. Therefore, I find that this factor also weighs in favor of dismissal.

### 3. The risk of prejudice to the defendants.

The defendants respond that they would suffer no risk of prejudice if the court keeps the amended complaint since they stipulated their consent to the amended complaint. Moreover, defendants argue, dismissing the amended complaint would prejudice them because they would effectively be deprived of their right to seek timely approval of the proposed settlement.

The Intervenors argue that there is no risk of prejudice to the defendants from dismissal of the amended complaint, as

dismissal would simply return matters to the status quo prevailing in Chicago prior to filing here.

*Hernandez* found that despite defendants' complaint of prejudice from plaintiffs' judge-shopping, they failed to show how the plaintiffs' judge-shopping might "impair the [defendants'] ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* (internal citation omitted). The court therefore found that the defendants failed to show the type of prejudice that is considered under the third factor.

I find that while the Intervenors have not demonstrated that the settling parties' judge-shopping "impaired the [Intervenors'] ability to go to trial," they have demonstrated that the settling parties' judge-shopping has "interfered with the rightful decision of the case." *Id.* The settling parties elected to terminate their involvement in the settlement approval process before Judge Anderson after the intervenors and the court had expended vast resources putting a process in place that would consider any objections raised by the intervenors and determine a fair process to analyze the proposed settlement. The settling parties termination of the settlement process in Chicago, only to move to Portland to start anew, has certainly interfered with the rightful decision of the case.

I find that the Intervenors have shown the type of prejudice that is considered under the third factor, and therefore, this factor weighs in favor of dismissal.

### 4. Public policy favoring disposition of cases on their merits.

The settling parties assert that dismissal of the amended complaint would do nothing to advance the public policy in favor of resolving cases on the merits. The Intervenors argue that the flip-side to the settling parties' argument is that public policy

is also not advanced by the settling parties' desire to settle the case in this court.

Since we are looking at reviewing a proposed settlement instead of actually resolving a case on its merits, this factor may not directly apply. *Hernandez* found that this factor counseled strongly against dismissal as "public policy favoring resolution on the merits is particularly important in civil rights cases." *Id.* Here, the public policy of fairly and thoroughly analyzing a proposed settlement of this magnitude and importance favors dismissing the amended complaint so the parties can resume the process they began in Chicago, utilizing the resources that were already in place and operating when they elected to leave the jurisdiction.

### 5. The availability of less drastic sanctions.

The settling parties concede that dismissal of the amended complaint is a less drastic sanction than dismissal of the complaint—which is not at issue here. The settling parties argue only that "where all four other factors counsel against dismissal of the case, there is no reason even to contemplate a lesser sanction." The Intervenors note that the settling parties concede that dismissal of the amended complaint is a far less drastic sanction than dismissal of the entire case, and assert that it is primarily for that reason that the *Hernandez* factors do not apply.

The *Hernandez* court found that the fifth factor weighed heavily against dismissal. The court noted that other cases of judge-shopping suggest alternative sanctions such as dismissal of the second action only, or a stay of the second action pending resolution of the first action. *Hernandez* also noted that the district court judge "did not discuss or try any alternative sanctions for judge-shopping." *Id.* at 399 "Nor did the court warn the

plaintiffs that their judge-shopping might result in dismissal of both actions." *Id.* "Accordingly, the district court failed to consider less drastic alternatives so as to satisfy the fifth [factor]." *Id.* (internal citations omitted).

First, as stated above, at issue here is not dismissal of the entire case but only dismissal of the amended complaint—clearly a less drastic sanction. Second, the settling parties were warned repeatedly about the potential consequences for judge-shopping. The arguments that judge-shopping did or did not occur, and any potential consequences, were presented by the settling parties and the Intervenors to the MDL Panel, to this court in writing via a specific (and exhaustively briefed) motion on this issue, and full-day court hearing. These parties have been clearly warned that their judge-shopping may result in the dismissal of their amended complaint. I find that the settling parties knew that dismissal of their amended complaint could result as a possible sanction for judge-shopping. *See Yourish,* 191 F.3d at 990 (the Ninth Circuit gives "great deference" to a finding of fact made by a district court). *See also, Primus Automotive Financial Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997) ("The district court has 'broad fact-finding powers' with respect to sanctions, and its findings warrant 'great deference.' ") (internal quotation omitted).

The sanction of dismissal of the amended complaint is appropriate here. I find clear evidence of judge-shopping by the settling parties. The fact that the settling parties grew increasingly unhappy with Judge Anderson as he expressed concern about giving quick approval to a proposed settlement with so many objecting intervenors, supports the finding that the settling parties wanted to find a new jurisdiction where the court, perhaps, would not share Judge Anderson's concern. To allow this amended complaint to go forward would be to approve the settling parties' tactics, and more importantly, would taint the settlement process in this court. Any result in this court regarding approval of the settlement proposal would appear suspect. I find that factor 5 weighs heavily in favor of dismissal.

In conclusion, factor 1 (public's interest in expeditious resolution of litigation) strongly favors dismissal; factor 2 (court's need to manage its docket) favors dismissal; factor 3 (risk of prejudice to the defendants or intervenors) favors dismissal; factor 4 (public policy favoring disposition of cases on their merits) favors dismissal; and factor 5 (availability of less drastic sanctions) heavily favors dismissal since that is exactly what would happen by dismissing only the amended complaint, and the settling parties were adequately warned by the court about potential consequences, including dismissal of the amended complaint, for judge-shopping.

We have 5 factors favoring dismissal, with 2 of those factors "heavily" favoring dismissal. *Hernandez* counsels that dismissal is appropriate when there are 4 factors favoring dismissal, or 3 factors strongly favoring dismissal. Based on an analysis of these five factors, the intervenors' motion to dismiss the amended complaint is granted.

### CONCLUSION

Protecting the integrity of the judicial process mandates dismissal of the amended complaint. The settling parties began a process in Chicago by marshaling the various resources of the court, including the service and time of a District Court Judge, a Magistrate Judge and a Special Master. The fact that the settling parties, at some point, became unhappy that the court would not rush approval of their proposed settlement, but instead intended to careful-

ly consider and thoroughly scrutinize it, is apparent from the record. The settling parties' action of abruptly removing themselves from the Chicago District Court's jurisdiction to start anew in Portland will not be sanctioned by this court. For this reason, the amended complaint must be dismissed.

Intervenors' Motion to Dismiss the Amended Complaint (doc. 46) is granted; the alternative Motion to Stay (doc. 46) is denied as moot. All pending motions are denied as moot.

IT IS SO ORDERED.